# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NOS. ABA-25-0143 |
| | * | ABA-25-0144 |
| PATRICK BRITTON-HARR, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | ****** | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO MODIFY CONDITIONS OF RELEASE

Defendant Patrick Britton-Harr ("Britton-Harr") has been charged with 11 counts of fraud by two separate indictments. While the government moved for detention following his arrest in May 2025 on the grounds that he posed a flight risk and danger to the community, the Court ordered Defendant Britton-Harr released on a $100,000 unsecured bond with special conditions of release. Now, with trial dates recently set for May and October of this year, Defendant Britton-Harr seeks a dramatic modification of his special conditions, including elimination of location monitoring, a return of his pilot's license, and permission to travel anywhere in the United States "with proper notice" to pretrial services. But he offers no new information material to the Court's previous decision to impose special conditions of release, and—given the forthcoming trials, likelihood of a custodial sentence upon conviction, and undisclosed business activities that appear to run afoul of the condition that he not have access to third party bank accounts—he continues to pose a substantial flight risk and danger to the community. Modification of the special conditions of release requested by Defendant Britton-Harr would essentially allow him the unfettered ability to flee and pose a risk to potential new fraud victims through his undisclosed business activities. Accordingly, the government, by and through undersigned counsel, opposes Defendant Britton-Harr's motion and requests that it be denied.

I.  **Background**

   A.  <u>Defendant Britton-Harr has Been Charged with Multiple Crimes for Operating Two Multi-Million Dollar Fraud Schemes Involving His Last Two Businesses—Provista and AeroVanti.</u>

On May 8, 2025, a grand jury sitting in the U.S. District Court for the District of Maryland returned two separate indictments against Defendant Britton-Harr. First, he was charged with violating 18 U.S.C. § 1343 for engaging in a wire fraud scheme from approximately November 2021 through approximately October 2023 to solicit approximately $15 million in payments from members of a private club offering on-demand flights aboard private aircraft owned or leased by an entity known as AeroVanti. *See* Indictment, ECF No. 1, 25-cr-143-ABA. The payments were intended to finance the purchase and reconditioning of five Piaggio jets. *Id.* at ¶¶ 4-6, 8, 23. Instead of using the funds as required, the Indictment alleges that Defendant Britton-Harr diverted the $15 million in funds for unauthorized purposes, including to purchase jewelry and boats. *Id.* at ¶¶ 13, 26.

Separately, Defendant Britton-Harr was charged with health care fraud, in violation of 18 U.S.C. § 1347, and transactional money laundering, in violation of 18 U.S.C. § 1957, for allegedly causing the submission to Medicare of more than $15 million in fraudulent claims for respiratory pathogen panel tests during the COVID-19 pandemic on behalf of a clinical laboratory company he owned called Provista Health, LLC ("Provista"). *See* Indictment, ECF No. 1, 25-cr-144-ABA at ¶¶ 2-5. The tests were medically unnecessary, were not ordered by a treating physician as required, were not performed in many cases, and were ineligible for reimbursement. *Id.* at ¶ 23. Defendant Britton-Harr allegedly used the fraudulently obtained Medicare funds for personal enrichment, including to purchase a Porsche. *Id.* at 11.

B.  <u>The Court Imposed Special Conditions of Release at Defendant Britton-Harr's Detention Hearing.</u>

Britton-Harr was arrested in South Carolina and had an initial appearance in the U.S. District Court for South Carolina on May 28, 2025, at which time the Court reviewed the charges against Defendant Britton-Harr and the potential penalties he faced. (ECF No. 7, 25-cr-742 (D. S.C.)). The government then moved for detention and the Court scheduled a detention hearing for May 30, 2025. (*Id.*, ECF Nos. 7, 10). At that hearing, the Court denied the government's request for detention and ordered Defendant Britton-Harr released on a $100,000 unsecured bond with special conditions. (*Id.*, ECF Nos. 13, 15). Thereafter, the Court issued an order setting the conditions of release pursuant to 18 U.S.C. § 3142(c), to reasonably assure Defendant Britton-Harr's appearance and the safety of the community. (*Id.*, ECF No. 16). Separately, the Court ordered Defendant Britton-Harr to appear in U.S. District Court for the District of Maryland (where charges were pending) and transferred bail. (*Id.*, ECF No. 17).

The conditions of release imposed by the U.S. District Court for the District of South Carolina included requirements that Defendant Britton-Harr surrender his passport, pilot's license, and medical card to a U.S. Probation Officer, that he avoid all contact with any person who may be a victim or witness in the investigation or prosecution, that he not travel outside of South Carolina or Maryland, that he participate in the location monitoring program with stand-alone monitoring in conjunction with global positioning system (GPS) technology, and that he disclose to Probation his access to or ownership of any planes, boats, yachts, and vehicles. (*Id.*, ECF No. 16).

On June 13, 2025, Defendant Britton-Harr had an initial appearance in this Court and was arraigned before Magistrate Judge Crawford on the charges returned in the two indictments. (ECF No. 11, No. 25-cr-143; ECF No. 10, No. 25-cr-144). The Court's order setting the

conditions of release kept all conditions imposed by the U.S. District Court for the District of South Carolina, except that travel was restricted only to Maryland (*i.e.*, Defendant Britton-Harr was no longer permitted to travel in South Carolina). The Court further ordered Defendant Britton-Harr not to have access to any bank accounts in the name of third parties or to open any new bank account without permission from Pretrial Services. (ECF No. 15, 25-cr-143; ECF No. 14, 25-cr-144).

On September 12, 2025, the Court modified the conditions of release by ordering Defendant Britton-Harr to surrender his passport and pilot's license to the clerk's office. (ECF No. 17, 25-cr-143; ECF No. 16, 25-cr-144). On December 9, 2025, Defendant Britton-Harr filed a consent motion, which was granted, to modify the conditions of release to allow him to travel to and from Dallas, Texas in a single day for the purpose of engaging in business concerning AeroVanti. (ECF Nos. 32, 33, 25-cr-143; ECF No. 29, 25-cr-144).

  C. <u>Defendant Britton-Harr Appears to be Engaging in Undisclosed Business Activities and is Operating a Third-Party Business Bank Account in Violation of his Conditions of Release.</u>

When interviewed by Pretrial Services in the District of South Carolina, Britton-Harr reported his employment as the CEO of AeroVanti and claimed to not earn any income from the company. Britton-Harr did not disclose involvement in any other business activities at that time nor, as far as the government is aware, to his District of Maryland probation officer. However, the government has learned that Defendant Britton-Harr is operating another private jet chartering company called BrixleyXchange, including managing the company's bank account in violation of his conditions of release.

Bank records obtained by the government indicate that an account for BrixleyXchange was opened with Piermont Bank associated with Troy Britton-Harr (Defendant Britton-Harr's brother)

4

and the business entity BrixleyXchange, Inc., with an address listed in Wilmington, DE.[1] Between January and September 2025 approximately $1.15 million was deposited into and withdrawn from this account. The government has learned of two instances in which Defendant Britton-Harr engaged directly with others on behalf of BrixleyXchange and seemingly directed wires into and out of the business bank account.

Specifically, in June 2025, Defendant Britton-Harr, through BrixleyXchange, assisted in chartering flights for an individual and brokering what that same person believed to be the purported purchase of a plane.[2] On June 12, 2025, Defendant Britton-Harr wrote to the individual that "the deposit will need to be submitted today and will remain refundable until agreement is accepted." The next day, on June 13, 2025 (the same day as Defendant Britton-Harr's initial appearance in the District of Maryland), the individual wired $216,000 (his portion of the down payment for the "partnership agreement") to BrixleyXchange's bank account. $140,000 was then promptly wired out of the BrixleyXchange bank account, including $82,000 to another account in the name of BrixleyXchange. After becoming aware of the pending charges against Defendant Britton-Harr, the individual contacted Defendant Britton-Harr by telephone on or about June 15,

---

1   The government is prepared to provide the Court with any of the bank records or communications discussed herein should it be necessary to adjudicate this motion. The government will also make those records available to the Defendant. The records had not yet been produced to the Defendant since they involve an ongoing investigation and do not relate to the present charges in the indictments.

2   Information obtained by the government, including a "partnership agreement" provided by Defendant Britton-Harr to this individual, indicate that the plane at issue—a Cessna Citation Excel aircraft—was not for sale despite whatever representations were made. Rather, according to the agreement sent by Defendant Britton-Harr, the individual was offered an opportunity to purchase a "partnership" in a lease of the plane for approximately $300,000, though the owner of the plane had not consented to any such arrangement. Notably, Defendant Britton-Harr corresponded with the owner of the plane via the email account "info@brixleyxchange.com".

2025. Defendant Britton-Harr informed the individual that though BrixleyXchange was in his brother's name, Defendant Britton-Harr participated in the business and shared in its profits. On June 17, 2025, Defendant Britton-Harr wrote to the individual, "We just closed on the Challenger, Gulfstream IV, 2 105ft MANGUSTA Yachts and an FBO in Puerto Rico today . . . ." Shortly thereafter, the individual had a falling out with Defendant Britton-Harr.

Separately, in July 2025, Defendant Britton-Harr wired $136,000 from the BrixleyXchange bank account to a company known as Renaissance Air, LLC, as payment for a flight for Britton-Harr's business associate and for chartering an international flight for a separate customer. On July 24, 2025, Defendant Britton-Harr sent Renaissance Air's representative a screenshot reflecting the $136,000 wire and writing, "the fed ref number will be coming shortly – the bank just processed a few moments ago – standby for confirmation." Renaissance Air, through its representative, then wired back $107,000 (keeping $29,000) after declining to engage with Defendant Britton-Harr to arrange for the charter of an international flight.

        D.      <u>The Instant Motion Was Filed After the Court Set Trial Dates and Without Conferring with Government Counsel.</u>

On December 17, 2025, this Court issued a scheduling order setting trial dates for May 18, 2026, and October 12, 2026, for Defendant Britton-Harr to face trial, respectively, as to the wire fraud and health care fraud charges against him. (ECF No. 35, 25-cr-143; ECF No. 31, 25-cr-144). Approximately two-weeks later, on January 5, 2026, counsel for Defendant Britton-Harr contacted undersigned counsel requesting approval for Defendant Britton-Harr to travel to Dallas, Texas for two days "for continued AeroVanti business." The government opposed the request and indicated that it wanted additional information about the meeting and that it believed the meeting could take place virtually. Counsel for Defendant Britton-Harr responded that the

defendant would be meeting with representatives of various companies for the purpose of finalizing contract negotiations with AeroVanti and provided Defendant Britton-Harr's planned flight itinerary via private air carrier. The government replied that it remained opposed to Defendant Britton-Harr's request and that it believed that any meetings should be conducted virtually.

On January 20, 2026, counsel for Defendant Britton-Harr filed the instant motion seeking a modification of his conditions of release. The motion went well beyond a request for Defendant Britton-Harr to travel to Dallas for two days. It requested the Court to remove electronic monitoring; order the return of Defendant Britton-Harr's pilot license; and permit him to travel to and from Dallas, Texas or other places within the continental United States "as necessary, with proper notice to Pre-Trial." (ECF No. 36 at 3, 25-cr-143; ECF No. 32 at 3, 25-cr-144). Counsel for Defendant Britton-Harr acknowledged that he did not confer with the government or Probation regarding this motion prior to filing it. (*Id.*).

**II. Argument**

    A.    <u>The Motion Offers No New Information.</u>

Defendant Britton-Harr does not provide any information unknown to him at the time of his detention hearing that would have a material bearing on whether there are conditions of release that will reasonably assure his appearance as required and the safety of any other person and the community. Courts have considered the lack of new and material information in declining to modify special conditions of release. *See United States v. Ross*, No. 23-cr-128, 2024 U.S. Dist. LEXIS 78717, at *8-9 (E.D. Tenn. April 30, 2024) (explaining that the standard set forth in 18 U.S.C. § 3142(f)(2)—requiring a movant to show that information exists that was not known to him at the time of the detention hearing and that has a material bearing on the previous decision—

7

is applied by many courts to evaluating a request to amend conditions of release pursuant to 18 U.S.C. § 3142(c)) (collected cases). To the extent this Court requires new and material information as a threshold for consideration of Defendant Britton-Harr's motion, it may not modify his conditions of release. *Cf. United States v. Riggs*, No. 1:23-cr-00022-SAG, 2025 U.S. Dist. LEXIS 9587 (D. Md. Jan. 15, 2025) (applying standard to motion for release from detention); *United States v. Brinkley*, No. 24-cr-00214-MJM, 2024 U.S. Dist. LEXIS 199559, at *2 (D. Md. Nov. 4, 2024) ("Defendant has not cited any information not known at the time of his detention hearing that would have a material bearing on the Court's previous decision.").

Here, Defendant Britton-Harr claims only that he "has been compliant with all conditions of release." (ECF No. 36 at ¶ 3, 25-cr-143; ECF No. 32 at ¶ 3, 25-cr-144). "But compliance with conditions of release is expected and does not constitute new and material information warranting amendment." (*Ross*, No. 23-cr-128, 2024 U.S. Dist. LEXIS 78717, at *11 (citing *United States v. Kube*, No. 119-cr-00257, 2020 U.S. Dist. LEXIS 73737, at *5 (E.D. Cal. Apr. 27, 2020)); *Cf. United States v. Linker*, No. 11-cr-38, 2016 U.S. Dist. LEXIS 77429, at *5 (E.D. Va. June 14, 2016) ("Some district courts have found that even perfect compliance with conditions of release does not qualify as 'exceptionally good behavior'" because "model prison conduct and full compliance with the terms of supervised release is what is expected of a person ....") (internal citations omitted).

Defendant Britton-Harr's other assertion—that he is not a flight risk because he did not flee prior to the filing in July 2023 of a civil complaint against him under the False Claims Act or prior to the return of an indictment against him (ECF No. 36 at 4, 25-cr-143; ECF No. 32 at 4, 25-cr-144)—is not new information that was unknown to him at the time of the detention hearing in

May 2025. Similarly, Defendant Britton Harr's argument that he poses no threat to the public because he is operating AeroVanti as a "legitimate" business, (ECF No. 36 at 5, 25-cr-143; ECF No. 32 at 5, 25-cr-144), also was known to Defendant Britton-Harr at the time of the detention hearing. Indeed, as noted above, the Pretrial Services Report prepared in advance of Defendant Britton-Harr's detention hearing in South Carolina on May 30, 2025, noted that had reported that he was the CEO of AeroVanti at the time.

  B.  <u>Defendant Britton-Harr Remains a Flight Risk and Danger to the Community.</u>

The considerable risk of Defendant Britton-Harr's non-appearance has only *increased* since the initial detention hearing. Now—unlike when he was first arrested in May 2025—Defendant Britton-Harr faces two upcoming trial dates in short order, accompanied by the certainty of impending judgment for his actions and the likelihood of substantial prison time in the event of a conviction. Defendant Britton-Harr also continues to pose a danger to the community. As described above, he has concealed from Probation his involvement with BrixleyXchange and appears to be operating the company's bank account, in direct violation of a condition of his release. It also is unclear to the government whether Defendant Britton-Harr has, in fact, disclosed to Probation his access to, or ownership of, any planes, boats, yachts, and vehicles, including "the Challenger, Gulfstream IV, [and] 2 105ft MANGUSTA Yachts" referenced above.

At the detention hearing, the government argued that Defendant Britton-Harr was a significant and literal flight risk, including because he was facing serious charges with the potential for a substantial custodial sentence, and because he had a pilot's license with access to multiple aircraft. *See, e.g.*, *United States v. Mills*, No. 3:06-mj-116, 2006 U.S. Dist. LEXIS 42430, at *7 (W.D.N.C. June 20, 2006) (finding the defendant to be a flight risk "because of his substantial

wealth . . . coupled with his piloting skill."); *Ross*, 2024 U.S. Dist. LEXIS 78717, at *13-14 (concluding that the defendant was a flight risk in part because he "owns and operates an aviation business"); *United States v. Rosenschein*, No. 16-CR-4571 MCA, 2017 U.S. Dist. LEXIS 3035, at *1 (D.N.M. Jan. 6, 2017) ("The Court further found that [defendant] was a flight risk because of his significant ties to another country, and because he had two airplanes, a helicopter, a pilot's license, and significant assets, giving him the means to leave the country relatively easily."). Moreover, the government asserted that he posed a danger to the community as a serial fraudster alleged to have engaged in various forms of financial fraud. *See, e.g.*, *United States v. Muhammad*, No. 25-cr-284, 2025 U.S. Dist. LEXIS 257100, at *12 (E.D. Va. Dec. 11, 2025) (". . . courts have recognized that economic harm—including fraud—may also constitute a 'danger to the community.'") (internal citation omitted); *United States v. Duke*, No. 16-cr-221, 2021 U.S. Dist. LEXIS 183857, at *10-11 (W.D.N.C. Sept. 27, 2021) (serial fraudster is a danger to the community). Indeed, Defendant Britton-Harr used his last two businesses—Provista and AeroVanti—to facilitate the multi-million-dollar frauds alleged in the pending indictments.

Defendant Britton-Harr's claims to the contrary—that he is not a flight risk or danger to the community because he did not flee prior legal proceedings and because AeroVanti is "an ongoing legitimate business that he is attending" (ECF No. 36 at 4-5, 25-cr-143; ECF No. 32 at 4-5, 25-cr-144)—ring hollow. Facing the certainty of impending trial, Defendant Britton-Harr has even *more* incentive to flee. Eliminating location monitoring, returning his pilot's license, and allowing him to travel without any practical restriction would give him the literal and practical means to do so.

The government also believes that Defendant Britton-Harr poses an ongoing risk to the community. The indictments speak for themselves. Moreover, information learned by the

10

government since his arrest in this case underscores the risks of him flying around the county engaging in unmonitored business activities. While representing to Probation and the Court that he is acting only as CEO of AeroVanti, Defendant Britton-Harr has surreptitiously operated a company in his brother's name and has not disclosed his involvement in BrixleyXchange. He has directed significant wires to/from a third-party business account. Time and again, Defendant Britton-Harr has proven an inability to engage in business truthfully. He has not been transparent with Probation and the Court, and does not warrant further trust from this Court through a significant loosening of his conditions of release.

For all these reasons, maintaining the special conditions of release as they are, including those conditions that Defendant Britton-Harr now seeks to remove, are what is required *at a minimum* to ensure Defendant Britton-Harr's appearance at trial and to protect the safety of the community.

## III. Conclusion

For the reasons set forth above, Defendant Britton-Harr's Motion to Modify Conditions of Release should be denied.

Respectfully submitted,

Kelly O. Hayes
United States Attorney
District of Maryland

Lorinda I. Laryea
Chief, Fraud Section
United States Department of Justice

By: /s/ Ariel Glasner
Ariel Glasner
Christopher A. Wenger
Trial Attorneys
U.S. Department of Justice, Criminal Division

Fraud Section
1400 New York Avenue, N.W.
Washington, D.C., 20005

Ari D. Evans
Matthew Phelps
Assistant United States Attorneys
United States Attorney's Office
District of Maryland

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NOS.   ABA-25-0143 |
| | * | ABA-25-0144 |
| PATRICK BRITTON-HARR, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2026, I filed the foregoing with the Clerk of the District Court using the CM-ECF system.

By:   */s/ Ari D. Evans*
Ari D. Evans
Assistant United States Attorney

13