```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


UNITED STATES OF AMERICA      *

         v.                   *    Case No. ABA-25-0143

  PATRICK BRITTON-HARR        *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

**MOTION TO DISMISS INDICTMENT FOR VIOLATION
OF THE PRESENTMENT CLAUSE OF THE FIFTH AMENDMENT
<u>AND THE INDICTMENT FAILED TO STATE AN OFFENSE</u>**

Now comes the Defendant, Patrick Britton-Harr, by his attorney, Law Offices of Gerald C. Ruter, P.C. and pursuant to F.R.Cr.P. 12(B), he respectively moves this Honorable Court to dismiss Counts One through Six of the Indictment for violations of the Fifth Amendment Presentment Clause, in that misrepresentations appear in the Indictment that were material to the returning of the Indictment and without which the grand jury may very well have not returned a true bill, and the Indictment fails to state an offense, in support of his motion states as follows:

1. Mr. Britton-Harr is charged by indictment with six counts of wire fraud, in violation of 18 U.S.C. 1343. The Indictment was returned and docketed on May 8, 2025.  See **Exhibit 1.**

**The Indictment**

2. The Indictment alleges that Mr. Britton-Harr was the owner and CEO of AeroVanti, Inc. and other affiliated entities. It alleges that AeroVanti was formed in 2021. The business was designed to offer flights for "members aboard aircraft that AeroVanti owned or leased." In November of 2021, AeroVanti entered into five lease purchase agreements for five aircraft. In March of 2022, AeroVanti established members known as "Top Gun." They could pay the sum of $150,000 in exchange for flying 100 hours. The Indictment alleges that the entire structure of the Top Gun membership was fraudulent because AeroVanti, through Mr. Britton-Harr, did not purchase any airplanes, did not have members funds disbursed to AeroVanti and did not use the members' funds as required.

The Defendant's position is the actions taken by AeroVanti and Mr. Britton-Harr at best make out a breach of contract but the Indictment's version of the actions with the alleged misrepresentations included attempt to make it out a wire fraud.

**The Alleged Misrepresentations**

3. **Paragraph 6** of the Indictment alleges that "Top Gun members were organized into five limited liability companies ("LLCs") of approximately twenty individual members, or "unitholders," per LLC. Each LLC was *created to finance AeroVanti's debt-free purchase of one of the five aircraft*

2

identified in Paragraph 4 of this Indictment on AeroVanti's behalf." (Emphasis added).

The Membership Agreement documents do not support this assertion. **Exhibit 2** is a copy of the Membership Agreement of "Individual-1" known to be Mr. William B. LeBlanc. The Court will note that there is no language in the Membership Agreement that suggests such a purpose as stated in the language of the Indictment.

**Exhibit 3** is a copy of the Addendum to the Membership Agreement of Individual-1, entered into on the same day as the Membership Agreement. The Addendum sets forth at section B. that the purpose of the Addendum was "for Member's purchase of 2,000 block-time fight hours at the rate of $1,500 per hour, for $3.0 million total proceeds." The Addendum states further at paragraph 1.d. that,

> "AeroVanti shall utilize the escrowed funds to acquire and recondition a Piaggio P. 180 Avanti aircraft, sn 1089, FAA registration N2444Z (the "Aircraft") to meet AeroVanti fleet standards and conformity with Part 135 requirements, *and to pay for Member's and Unitholders' use of Aircraft*."

The Indictment fails to quote the italicized language that makes clear that the escrowed money was also available to pay for the Members' use of the aircraft.

4. **Paragraph 8** of the Indictment states that "(T)he primary justification for disbursal of unitholders funds under

3

Paragraph 1.d was to "acquire and recondition a [specifically designated aircraft] to meet fleet standards and conformity with Part 135 requirements." Once again, the Indictment is silent on that portion of paragraph 1.d that makes clear that disbursements could also be used for Members "use of the aircraft."

5. **Paragraph 18** states that, "At times, Britton-Harr made material misrepresentations to Top Gun members by claiming he was executing a "rolling close" to *purchase and obtain title to aircraft*." (Emphasis added). It then recites an email dated March 30, 2022, and sent to Individual-1, known to be William Le Blanc, III and Individual-2, known to be William Morris.

The government's assertion that this representation was designed to mislead these two individuals is incorrect. This reference to a "rolling close" was referencing the closing on block time flight hours not the purchase of an airplane. The government knew that this was the case because it was in possession of all Escrow Agreement Disbursement Instructions for each disbursement made by Gilchrist Aviation Law, P.C., the Escrow Agent from April 5, 2022, through May 9, 2022. See **Exhibits 4A-4AA**. The Instructions make clear that the "instructions are in connection with the Addendum to AeroVanti Membership Agreement for purchase of block time flight hours and use of funds, and related documents (collectively, the "Member

4

Agreement") executed on or about March 31, 2022, by AeroVanti and Member, and Aircraft (hereinafter defined)." Each document is DocuSigned by Mr. Britton-Harr and Mr. William B. LeBlanc, III, as Manager of 44Z, LLC. (Identified in the Indictment as Individual-1). Each certified the disbursement Amount was "in compliance with section 1.d of the Member Agreement." Mr. LeBlanc was actually the managing member of all five LLCs.

In addition, the government was aware that 44Z was subject to an Aircraft Lease Purchase Agreement entered into on November 3, 2021, between the Seller, Endless Mountain Properties, LLC. and AeroVanti Aircraft, LLC.[1] **See Exhibit 5.** That agreement called for an initial payment of $230,000 and monthly lease payments of $30,000 and a balloon payment of $5,000. The other four Lease Purchase Agreements required similar monthly payments for two to four years and a balloon payment at the end of the term. The disbursements demonstrate that funds, in addition to the expenses incurred with each draw, exceed the monthly lease purchase amounts to be paid on each Lease Purchase Agreement and were used for other purposes consistent with paragraph 1.d.

6. **Paragraph 20.** The Indictment alleges that "Britton-Harr caused the escrow agent to prepare disbursal instructions to authorize the release of Top Gun unitholder funds to AeroVanti."

---

[1] The four other LLCs also had Aircraft Lease Purchase Agreements in place for the purchase of the four airplanes at issue. All were entered into in November of 2021.

Upon information and belief, the government is aware that the Escrow Agreements and the Escrow Agreement Disbursement Instructions were prepared by the Escrow Agent, Mr. Jack Gilchrist, and Mr. Britton-Harr played no part in their being added as documents necessary to complete the transactions the parties had entered into. Mr. Britton-Harr was obligated by the terms of the Escrow Agreement at paragraph four to execute the Escrow Agreement Disbursement Instruction that is in conformity with section 1.d of the Member Agreement. See **Exhibit 6**, a document created by Gilchrist. The Escrow Agreement was executed by AeroVanti, through Mr. Britton-Harr; 44Z LLC, through Mr. LaBlanc; and Gilchrist Aviation Law, P.C., through Mr. Gilchrist. It makes it clear, as do other documents discussed herein, that members were purchasing blocks of flight time. It makes it clear that Members were to make their payments directly to the Escrow Agent. It makes clear that those funds received are "to be held in escrow until such time as AeroVanti and Member provide a form written certification to Escrow Agent stating the amount of Funds to be released to AeroVanti." (third WHEREAS in this Exhibit).

    7. **Paragraph 22.** The Indictment alleges that ". . .Britton-Harr *did not use any of the money* he caused to be disbursed to purchase the relevant aircraft… (emphasis added)." Upon information and belief, the government is aware that AeroVanti

made monthly payments for Lease Purchase Agreements, made repairs to the aircraft and were responsible for many other expenses not covered in the Lease Purchase Agreements, all of which consisted of payments contemplated by section 1.d.

In addition, the government alleges in paragraph 22 that "nor did BRITTON-HARR cause title to those aircraft to be held in escrow as the Member agreement required." It is true the Escrow Agreement (Exhibit 6) at the fourth "WHEREAS" specifically states that "AeroVanti shall deliver directly to ESCROW AGENT *title documentation* for one or more *aircraft* in the AeroVanti fleet, to be *held in escrow* until such time as AeroVanti and Member provide a written form of certification to ESCROW AGENT stating the documentation be either returned to AeroVanti or delivered to Member." Section 1.d of the Addendum states the same thing.

There appeared to be uncertainty among the parties regarding the definition and contents of a title document in relation to aircraft. **Exhibit 7** is another document prepared by Mr. Gilchrist. It was prepared on April 8, 2022, and prepared for Steven Leitess, Esquire, counsel for AeroVanti. It describes the aircraft N2444Z. At page 1, it states that the "U.S. REGISTERED OWNER" of the "Airframe" to be "Endless Mountains Properties LLC ("EMP")' however, "Please note" below regarding registration, which will expire July 31, 2023." The next section

7

Entitled FAA ENCUMBRANCES:" states there are "no unreleased liens or encumbrances except those created below by:

> Aircraft Lease Purchase agreement, dated November 3, 2021 (the "Lease"), between EMP, as lessor, and AeroVanti Aircraft LLC, as Lessee (the "Lessee"), with Technical Acceptance certificate, executed by the Lessee, attached, recorded as one instrument by the FAA on March 7, 2022, and assigned conveyance number OT028843."

This portion of the document provides proof that the aircraft has been registered with the FAA.

The next paragraph entitled "PLEASE NOTE: states,

> "The Lease is the equivalent of a "conditional sales contract" within the meaning of 49 U.S.C. § 40102(a)(18). Consequently, the Lease serves as evidence of ownership in the name of the Lessee for the purpose of registration with the FAA. However, the FAA Records currently reflect title in the name of EMP, rather than the Lessee."
>
> In accordance with 14 C.F.R. § 47.5(b), an aircraft may be registered only by and in the legal name of its owner. Subsection (d) thereof states that an "owner" includes a lessee of an aircraft under a contract or conditional sale. A conditional sales contract is defined in 49 U.S.C. § 40102(a)(18)(B) as a contract to bail or lease an aircraft under which the bailee or lessee (i) agrees to pay an amount subsequently equal to the value of the property, and (ii) is to become, or has the option of becoming, the owner of the property on complying contract."

This section of the document clearly states that, for FAA registration purposes, AeroVanti, as the Lessee, is considered the owner of the aircraft.

In the following paragraph on page two, Mr. Gilchrist recommends that an opinion be obtained from FAA counsel, the filing of an Aircraft Registration Application be filled out and

8

both documents be sent to the FAA. At present, counsel is not certain if those recommendations were enacted.

The point being is the Lease Purchase Agreement was attached to each Disbursement Instruction and kept by the Escrow Agent, which shows compliance with the requirements of section 1.d and the Escrow Agreement. All LLCs had identical "FAA & INTERNATIONAL REGISTRY RECORDS SEARCH MEMORANDUM" attached to them.

8. **Paragraph 23.** The Indictment states that between April and October of 2022, Mr. Britton-Harr caused 28 disbursals to be made in the amount of $14,740,000, into two AeroVanti bank accounts. What concerns the defense is the question of whether the grand jury was advised of the method by which escrowed funds are received by AeroVanti. The sequence is: 1) members send money to the Escrow Agent for the purpose of fulfilling their obligations to their membership so they can fly in an AeroVanti airplane or a third-party charter; 2) the Escrow Agent notifies AeroVanti through Mr. Britton-Harr and (in the case of 44Z LLC) Mr. William LeBlanc, the Member-Manager of the 44Z LLC, by sending to them a filled-out Escrow Agreement Disbursement Instruction for the purpose of advising them of funds available to AeroVanti;[2] 3) both Mr. LeBlanc and Mr. Britton-Harr review

---

[2] Steven Leitess, Esquire, a senior partner and Chair of the Business and Finance Group at Silverman Thompson Slutkin White, LLC, and counsel to AeroVanti also receives each Instruction.

9

the Instruction and determine if they will sign it; 4) if both sign it and a copy of the Lease Purchase Agreement is filed and sent to the Escrow Agent and both parties certify that the disbursement amount is accurate and in compliance with section 1.d, the funds are wired to AeroVanti.

This is the system set up by the Escrow Agent and there are no additional requirements or steps to be taken.

**Argument**

When the government introduces inaccurate testimony, the Indictment is subject to dismissal if the effect of the errors "substantially influenced the grand jury's decision to indict," or if "there is grave doubt that the decision to indict was free from substantial influence" of such error. <u>Bank of Nova Scotia</u>, 487 U.S. 250, 256 (1988).

The Fifth Amendment to the United States Constitution states, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury…" In <u>United States v. Calandra</u>, 414 U.S. 338, 343 (1974), the Supreme Court announced,

> "The institution of the grand jury is deeply rooted
> In Anglo-American history… In this country the
> Founders thought the grand jury so essential to basic
> liberties that they provided in the Fifth Amendment
> that federal prosecution for serious crimes can only
> be instituted by a 'presentment or indictment of a
> Grand Jury.' The grand jury's historic function
> survive to this day. Its responsibilities continue to
> include both the determination whether there is probable

cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions."

United States v. Lemire, 720 f.2d 1327, 1345 (D.C. Cir. 1983), stands for the proposition that a defendant is deprived of his right to have all charges screened by the grand jury "if the deviation in proof… from the specifics of the indictment affects an essential element of the offense charged."

In the case pending before this Court the defense believes and therefore avers that there were several misstatements within the four corners of the Indictment that had the legal effect of attempting to provide the required element of a "scheme to defraud", meaning that Mr. Britton-Harr acted with a "specific intent" to defraud. See United States v. Godwin, 272 F.3d 659, 666 (4th Cir. 2001), *cert. denied*, 535 U.S. 1069 (2002). In addition, the misstatements had the legal effect of attempting to provide a second element of wire fraud, that being "materiality." See Neder v. United States, 527 U.S. 1, 25 (1999).

Dismissal of an indictment is appropriate where the court finds that errors before the Grand Jury "substantially influenced the grand jury's decision to indict, or there is 'grave doubt' that the decision to indict was free from substantial influence of such violations." See United States v. Mechanik, 475 U.S. 66, 78 (1986).

11

Fraud cases are often much more complex and convoluted than perhaps gun or drug cases. This case is one of those. By not carefully crafting an indictment with precise wording or leaving out certain portions contained in a legally binding contract or flat out misstating as fact that which is not a fact at all will have the effect of confusing a grand jury.

Placing in an indictment (at paragraph 6) as fact that the LLCs were formed for the purpose of financing debt free aircraft when there is no such language or hint of such an understanding when the truth is they were formed for the purpose of creating a means for participants to obtain private airfare by membership in a flying club. This misrepresentation was designed to draw an inference that Mr. Britton-Harr was engaged in a fraud scheme and had the specific intent to defraud.

Failing to quote the entirety of the permitted use of escrowed funds (Paragraph 8), that being "use of the aircraft" as being a permitted use of escrowed funds was designed to infer Mr. Britton-Harr was attempting to defraud AeroVanti's members. The government knew that the use of aircraft entails the monthly payments on the lease purchase agreements, repairs of the airplanes subject to the lease purchase agreements, employees of AeroVanti, and much more.

Stating that Mr. Britton-Harr had lied to Individual-1 and Indovidual-2 by advising them that he was engaged in a "rolling

close" for the purchase of airplanes (Paragraph 18) was known to be untrue. It was a rolling close for flight hours for AeroVanti members and could not have been mistaken for any other purpose. It was so stated to make it look as if Mr. Britton-Harr had lied to them and tricked them into becoming members and tricked them into enticing them to seek out additional members.

Mr. Britton-Harr did not "cause" Individual-1 and Individual-2 to form LLCs (Paragraph 19). Under oath, Mr. LeBlanc stated exactly to the contrary. The government knew of this testimony and Mr. LeBlanc has been interviewed many times by government counsel and investigators. The misrepresentation is in the Indictment to make Mr. Britton-Harr appear to be a master manipulator and these two sophisticated businessmen were no match for him.

Government prosecutors and investigators knew that the all-important Escrow Agreements and Escrow Agreement Disbursement Instructions (Paragraph 20) were created by the Escrow Agent, not Mr. Britton-Harr. The government knew Mr. Gilchrist wrote the Memorandum that stated that AeroVanti was the owner of the five aircraft in question. The government knew that both Individual-1 and Individual-2 knew the Escrow Agent created those documents and that Mr. Britton-Harr simply followed the dictates of Mr. Gilchrist and the provisions he wrote to make the agreements entered into work for everyone. The government

13

wrote this knowingly false assertion to make it appear that Mr. Britton-Harr ran and "caused" anything and everything that happened to defraud the membership.

The Indictment flat out states that Mr. Britton-Harr did not use any of the money to purchase any aircraft. The government prosecutors and investigators knew part of the escrowed money was used to pay the monthly lease purchase agreement and for repairs to the fleet of several planes AeroVanti subject to the lease purchase agreements. Why did the government team write that not one penny was used to purchase airplanes when it had to be known to them it was not true? It was clearly written to persuade the grand jury that Mr. Britton-Harr intended from the beginning to defraud, and he had the specific intent to take their money even though it appears that as of the time of the issuance of the indictment no member had lost anything.

It is highly doubtful that the grand jury was advised of the precise procedure used to disburse any funds from escrow (Paragraph 22). It certainly was not contained in the four corners of the Indictment. Had the grand jury been informed of the process they highly likely would have concluded that this is a civil case masquerading as a criminal case.

**The Indictment fails to State an Offense**

An Indictment must be dismissed if it fails to set forth that a federal offense has been committed. <u>United States v. Williams</u>, 1527 F.3d 294, 299 (4th Cir. 1998). The indictment must set forth the elements of the offense. <u>United States v. Darby</u>, 37 F.3d 1059, 1063 (4th Cir. 1994). An essential element is one whose "specification… is necessary to establish the very illegality of the behavior and thus the court's jurisdiction."

This indictment failed to set forth the element of a scheme to defraud. "In order to establish the first element i.e., the scheme to defraud, the Government must prove that the defendants acted with the *specific intent to defraud*, which may be inferred from the *totality of the circumstances* and need not be proven by direct evidence."  This must, of course, be pled in the indictment.

The scheme, says the government in its indictment (paragraph 8), was to get the members to provide money for the purpose of AeroVanti, in part, to "acquire and recondition" designated airplanes.   AeroVanti did that. Paragraph 22, Exhibit 7.

The scheme says the government in its indictment (paragraph 9), was to "deliver to the escrow agent the title" to the [airplanes]. It did that. Paragraph 22, Exhibit 7.

The scheme says the government in its indictment (paragraph 18), was for Mr. Britton-Harr to misrepresent he was closing on

15

the purchase of airplanes and he wasn't. We have contested that assertion above, but even if true, AeroVanti had valid Lease Purchase Agreements on all airplanes, which according to Mr. Gilchrist are tantamount to ownership and this alleged misrepresentation is not material in any way. See Exhibit 7. It must always be remembered the members were purchasing flight hours not planes. And AeroVanti had contracted to make sure its members, if not able to fly in an AeroVanti plane, would be able to fly on a similar plane with no additional cost to the member.

The scheme says the government, in its indictment (paragraphs 24-26), was for Mr. Britton-Harr to withdraw funds from the AeroVanti accounts following its deposits from the Escrow Agent and following the certification that AeroVanti had complied with the terms of the Member Agreement, signed by Mr. Britton-Harr and Mr. LeBlanc. Because Mr. Britton-Harr had complied with the terms of the Membership Agreement he was entitled to those disbursements and had not breached his agreement. The airplanes being purchased on a lease purchase basis were the property of AeroVanti. The property of its members was $150,000 worth of flight time that was being provided. This was not fraud, it was the terms formed by AeroVanti, through its counsel, Mr. Leitiss, Mr. LaBlanc, Mr. Morris and all the members of Top Gun.

**Conclusion**

The Court should find that these misrepresentations whether willful or due to gross negligence are violations that had an 'effect on the grand jury's decision to indict or creates "grave doubt that the decision to indict was free from such substantial influence, the violations cannot be deemed harmless'…" <u>Nova Scotia</u>.

The Court should grant the Defendant's request for a dismissal of the Indictment. In the alternative, the Court should order the government to turn over applicable grand jury transcripts for the defense to further quantify the full scope of all misrepresentations.

The Court should find that the indictment fails to define a cognizable federal offense because a scheme to defraud has not been set forth in the indictment.

        Respectfully Submitted,

        /s/ Gerald C. Ruter

        _____
        Law Offices of Gerald C. Ruter, P.C.
        9411 Philadelphia Road, Suite O
        Baltimore, Maryland 21287
        (410) 238-8000
        Ruterlaw@verizon.net

**Certificate of Service**

I HEREBY CERTIFY that a copy of this document was submitted to all counsel of record by CM/ECF on this 18th day of February, 2026.

/s/ Gerald C. Ruter
_____
Gerald C. Ruter