**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO.   ABA-25-0143** |
| | * | |
| **PATRICK BRITTON-HARR,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | ******* | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**SECOND MOTION TO SUPPRESS SEARCH EVIDENCE**

The United States of America, by and through its counsel, respectfully submits this Response in Opposition to Defendant's Second Motion to Suppress Search Evidence (ECF No. 51) (the "Second Motion to Suppress").[1]   Defendant filed his first Motion to Suppress (the "First Motion to Suppress") (ECF No. 44) seeking to suppress evidence seized pursuant to a July 2024 search warrant issued to Microsoft (the "July 2024 Search Warrant").   For the reasons detailed below, the government executed a new warrant on or about March 5, 2026, (the "March 2026 Search Warrant") to authorize the review of the data produced by Microsoft in March 2026 pursuant to the July 2024 Search Warrant.   Defendant's Second Motion to Suppress seeks to suppress the evidence searched pursuant to the March 2026 Search Warrant for nearly all the same reasons as asserted in the First Motion to Suppress.   But, as set forth in the government's Response in Opposition to the First Motion to Suppress (ECF. No. 49) ("Opposition to the First Motion")

---

[1] Although the Second Motion to Suppress references the March 16, 2026, deadline for filing replies to pretrial motions, the filing is captioned as a motion, not a reply. *See* Second Motion to Suppress at 1, 4. The government recognizes that the February 13, 2026, deadline for filing pretrial motions has passed, as have the deadlines for filing responses and replies. ECF No. 35. However, the government files this response to address Defendant's Second Motion to Suppress so that the Court may consider it along with the First Motion to Suppress at the previously scheduled March 25, 2026, motions hearing.

and for the additional reasons discussed below, Defendant's arguments in favor of suppression are conclusory and without legal merit. Accordingly, the Second Motion to Suppress should be denied.

I. **THE GOVERNMENT'S REVIEW OF THE DATA SEIZED FROM MICROSOFT IS AUTHORIZED BY BOTH THE JULY 2024 AND THE MARCH 2026 SEARCH WARRANTS.**

As detailed in its Opposition to the First Motion to Suppress,[2] in July 2024 the government obtained a search warrant authorized by Magistrate Judge J. Mark Coulson that required Microsoft to produce information associated with accounts rdepol@aerovanti.com and pbh@aerovanti.com (the "Target Accounts"). The government thereafter seized approximately 15 documents (excluding attachments) produced by Microsoft in November 2024 as responsive to the July 2024 Search Warrant. At that time, Microsoft provided a cover letter with the production indicating that "Microsoft has received your legal demand for the account(s) rdepol@aerovanti.com and pbh@aerovanti.com and has provided data for the following services, if any such data exists: MSA, Email." *See* Exhibit A ("Microsoft's cover letter"). Microsoft unequivocally represented that its production included all responsive records to the search warrant: "Microsoft has conducted a reasonable and diligent search for the records requested in the attached legal request. *All available records that are responsive to your legal demand are included in this production.*" *See id*. (emphasis added). Despite the limited production, based on Microsoft's express representations that it had produced "all available records" responsive to the July 2024 Search Warrant, the government understood that any further responsive material existed.

---

[2] For purposes of this response, the government hereby incorporates by reference its Opposition to the First Motion to Suppress and will not repeat all the detailed facts set forth therein (*see* Opposition to the First Motion to Suppress at 1–5).

In preparing for the upcoming motions hearing and trial in this case, on or about February 25, 2026, the government communicated with a representative for Microsoft to understand the limited nature of Microsoft's November 2024 production. *See* Opposition to the First Motion to Suppress at 4–5. The government was interested in exploring whether there might be relevant information that could be used at trial related to the possible deletion of emails. Microsoft subsequently informed the government that it had erred in its November 2024 response and that it had previously *collected, but failed to produce,* approximately 305,000 items in response to the prior warrant. *See* Exhibit B, Microsoft Declaration Authenticating Business Records, dated March 9, 2026, at 1 ("On or about February 25, 2026, law enforcement contacted Microsoft. Upon receiving the inquiry, Microsoft determined that the wrong letter was sent with the earlier production and that there was additional enterprise data that had not been produced to law enforcement."). After acknowledging it's error, Microsoft "worked to produce the previously collected data as required by the warrant." *Id*. at 1-2. On or about March 5, 2026, after addressing technical challenges with transmitting the materials to the government, Microsoft successfully produced the "previously collected responsive data as required by the warrant." *Id.* at 1-2.

Microsoft erred in representing to the government in November 2024 that its response to the July 2024 Search Warrant was complete when in fact it had collected but failed to transmit all responsive materials as required by the July 2024 warrant. The company only realized its error upon the government's inquiry in February 2026. As such, the government believes it could have proceeded with a review of the Microsoft data associated with the Target Accounts that was produced on or about March 5, 2026, without encroaching upon the standard for a reasonable search and seizure under the Fourth Amendment. Nevertheless, out of an abundance of caution, the government sought a new warrant to review the newly produced materials. On March 5, 2026, the Honorable A. David Copperthite authorized said warrant to review the Microsoft data. *See* Exhibit C.

The affidavit and Attachment B for the March 2026 Search Warrant largely tracked the language from the July 2024 Search Warrant, with a few minor exceptions. The government provided the Court with relevant facts describing why it was seeking a second search warrant for the same data. *See* Exhibit C, Affidavit, ¶¶ 2-10. The affidavit for the March 2026 Search Warrant also noted the government's evolved perspective on former AeroVanti COO Robert De Pol. At the time of the July 2024 Search Warrant, the government had probable cause to believe that De Pol had co-conspired with Britton-Harr. Following continued investigation, the government now views De Pol as a witness to the scheme. Finally, as compared to the July 2024 Search Warrant, the March 2026 Search Warrant affidavit provided a more streamlined description of the disbursement from escrow and unauthorized uses of those funds. *See id.*, Affidavit, ¶¶ 60-77.

To produce the materials as expeditiously as possible, on or about March 9, 2026, the government provided to Defendant's counsel a flash drive containing the unfiltered return of materials from Microsoft. The government believes based upon emails obtained from other sources (and produced in discovery) that the data associated with the Target Accounts is relevant and important to the government's case-in-chief. Defendant was the CEO and founder of AeroVanti, and emails associated with the @aerovanti.com business account were used in furtherance of the alleged fraud scheme. More specifically, Defendant sent and received emails using his email account (pbh@aerovanti.com) to advance the fraud by, for example, communicating with AeroVanti employees, making representations to AeroVanti members/victims regarding the purported business structure (including as it related to the purchase of aircraft and use of member funds), and to authorize and secure the release of approximately $15 million of victim funds held in escrow. De Pol was AeroVanti's COO and emails that he sent or received from his account (rdepol@aerovanti.com) reflect communications with the Defendant and others regarding the AeroVanti business, what Defendant told him (or did not tell him) regarding the use of members' funds and the purported purchase of

aircraft, how (if at all) AeroVanti sought to conform to applicable regulations, and communications with AeroVanti members.

Notably, the government trial team in this case does not yet have access to the data associated with the Target Accounts produced by Microsoft in March 2026 because they first are being reviewed for privileged information by attorneys in the Department of Justice Special Matters Unit who are not assigned to this matter. *See* Exhibit C at 77-78 and ECF No. 44.1 at 39–40 (describing procedures for handling potentially privileged information). The government informed Defendant's counsel that upon completion of the filter review, the filtered documents would be produced to counsel separately from the full, unfiltered production that was made to counsel on March 9, 2026.

## II.     SUPPLEMENTAL LEGAL AUTHORITY AND ARGUMENT

The Second Motion to Suppress generally repeats verbatim Defendant's arguments set forth in the First Motion to Suppress.  *See* Second Motion to Suppress at 1–2, 4 (making the same arguments for suppression of the July 2024 Search Warrant for suppression of the March 2026 Search Warrant). As such, the government's Opposition to the First Motion to Suppress is incorporated here, and the Court should deny the Second Motion to Suppress for all the reasons previously detailed by the government in response to the First Motion to Suppress.

Defendant's only "new" argument in the Second Motion to Suppress is that suppression is warranted because he has "had little time to address" the March 2026 Search Warrant.  (*See* Second Motion to Suppress at ¶ 12).  But Defendant cites to no authority in support of his assertion, and the argument runs counter to controlling precedent, common sense, and the public interest.

The record is clear that the delay in production was attributable to Microsoft's error and to its November 2024 letter averring that "all available records that are responsive to your legal demand are included in this production," not to any government misconduct.  Accordingly, the extreme sanction of exclusion is not warranted. *C.f., United States v. Rush*, 808 F.3d 1007, 1013 (4th Cir. 2015)

(excluding evidence obtained through a deliberate lie on the part of law enforcement as providing future deterrence from future violations of the Fourth Amendment).

Given the highly probative nature of the information contained in the Target Accounts described above, exclusion also would unfairly impact the government's case-in-chief when it has acted entirely in good faith. And the government has worked expeditiously and diligently to ensure that Defendant suffers no prejudice from the production of these materials in relative proximity to trial. Within four days of obtaining the data and submitting the March 2026 Search Warrant, the government produced the unfiltered data to Defendant more than two months prior to trial. The fact that the government's trial team has yet to access the data because of the ongoing filter review does not affect Defendant's ability to review the unfiltered data or to adequately prepare for trial.

Suppression of evidence is a last resort. The Supreme Court created the exclusionary rule to prevent the government from using evidence obtained in violation of a defendant's Fourth Amendment rights. *Davis v. United States*, 564 U.S. 229, 231–32 (2011). As the Fourth Circuit noted, however, "exclusion of evidence has always been the last resort, not the first impulse," because the "sole purpose" of the rule is to deter future violations of the Fourth Amendment. *United States v. Stephens*, 764 F.3d 327, 335 (4th Cir. 2014) (cleaned up); *see also Herring v. United States*, 555 U.S. 135, 137 (2009) ("suppression is not an automatic consequence of a Fourth Amendment violation. Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct."); *United States v. Leon*, 468 U.S. 897, 916 (1984) (discussing rationale for "the extreme sanction of exclusion."). Further, exclusion of evidence creates "substantial social costs." *Leon*, 468 U.S. at 907. Here, suppression of this core evidence would impact the jury's fact-finding mission.

And the exclusionary rule itself is subject to exceptions, including the good-faith doctrine. *Davis*, 564 U.S. at 232, 236–40. In fact, the Supreme Court has stated that, in order "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter

it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."
*Herring*, 555 U.S. at 144. "[W]hen the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way."   *Davis*, 564 U.S. at 238 (cleaned up).

The Court should also deny the Second Motion to Suppress for all the reasons detailed in the Opposition to the First Motion to Suppress.   Both the July 2024 Search Warrant and the March 2026 Search Warrant were amply supported by probable cause. The applications clearly delineated, with specific time frames, the items to be seized and twice were authorized by a detached and neutral magistrate judge. *See Leon*, 468 U.S. at 914 (according "great deference" to a magistrate's determination of probable cause).   Other than vague and conclusory assertions, in neither motion does Defendant offer a basis for suppression of the evidence.

## III.    CONCLUSION

For the foregoing reasons, the government respectfully submits that Defendant's Second Motion to Suppress Search Evidence should be denied.

Dated: March 20, 2026

Respectfully submitted,

Kelly O. Hayes
United States Attorney
District of Maryland

Lorinda I. Laryea
Chief, Fraud Section
United States Department of Justice


By: /s/ *Ari Evans*

Ari D. Evans
Assistant United States Attorney
United States Attorney's Office
District of Maryland

Ariel Glasner
Trial Attorney
U.S. Department of Justice, Criminal Division
Fraud Section
1400 New York Avenue, N.W.
Washington, D.C., 20005

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 20, 2026, I caused a copy of the foregoing

motion to be filed electronically with the Court and counsel of record using the CM/ECF

system.

> /s/ Ari Evans
> Ari D. Evans
> Assistant United States Attorney