**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Criminal No. ABA-25-00143** |
| | * | |
| **PATRICK BRITTON-HARR** | * | |

* * * * * * * * * * * *

**DEFENDANT'S SUPPLEMENTAL RESPONSE REGARDING THE SUFFICIENCY OF THE EVIDENTIARY RECORD**

Now comes Patrick Britton-Harr, by his attorney, Law Office of Gerald C. Ruter, P.C. and submits this supplemental response concerning whether further fact-finding is required before the Court should decide Defendant's pending motion for a new trial.

The Government suggested during the evidentiary proceedings that granting Defendant's motion on the present record could invite appellate reversal because insufficient fact-finding has occurred. Controlling precedents does not impose an exhaustion requirement or require the Court to call every conceivable witness before ruling. The governing question is whether the evidentiary proceedings have produced a sufficiently reliable record for the Court to determine: (1) the circumstances of the unauthorized communications; (2) whether those communications concerned the matter pending before the jury and were more than innocuous; and (3) whether the Government has established that

no reasonable possibility exists that the communications influenced the verdict.

Here, the Court conducted an evidentiary proceeding, received sworn testimony from the court reporter responsible for reporting the incidents, permitted examination by both parties, and confirmed the factual foundation for the contemporaneous written report. The operative allegations therefore no longer rest solely on an unverified letter or secondhand assertion. The Court now has competent evidence from which it can determine whether the presumption of prejudice applies and whether the Government has rebutted it.

## I. THE GOVERNING AUTHORITIES REQUIRE A MEANINGFUL INQUIRY, NOT EXHAUSTION OF EVERY POSSIBLE SOURCE OF EVIDENCE.

In Remmer v. United States, the Supreme Court held that a private communication or contact with a juror during trial concerning the matter before the jury is presumptively prejudicial. 347 U.S. 227, 229 (1954). The presumption is rebuttable, but "the burden rests heavily upon the Government" to establish that the contact was harmless. Id. The district court must determine "the circumstances, the impact thereof upon the jurors, and whether or not it was prejudicial" through a hearing in which the parties may participate. Id. at 229-30.

Nothing in Remmer prescribes a minimum number of witnesses, requires testimony from every juror or court employee, or

demands that the Court pursue every theoretically available line of investigation. The required inquiry is functional: the record must allow the Court to determine what occurred and whether the Government has rebutted the resulting presumption of prejudice.

The Fourth Circuit applies that framework through a burden-shifting analysis. A defendant's initial burden is to present competent evidence of an extrajudicial juror contact that is more than innocuous. United States v. Cheek, 94 F.3d 136, 141 (4th Cir. 1996). That threshold is a "minimal standard." Id. Once satisfied, prejudice is presumed and the burden shifts to the Government.

The Government then must demonstrate that "there exists no reasonable possibility that the jury's verdict was influenced by an improper communication." United States v. Basham, 561 F.3d 302, 320 (4th Cir. 2009) (quoting Cheek, 94 F.3d at 141). This is a substantial burden, and the ultimate determination concerning juror impartiality is entrusted principally to the district judge, who has observed the proceedings and assessed the evidence firsthand. Id. at 319-20.

In United States v. Johnson ("Johnson I"), the Fourth Circuit required a meaningful adversarial inquiry capable of establishing "what actually transpired" and whether the Government could demonstrate harmlessness. 954 F.3d 174, 180-83 (4th Cir. 2020). The deficiency in Johnson I was not the failure

to reach an arbitrary numerical threshold of witnesses. It was that the earlier inquiry, conducted primarily through court personnel, did not adequately investigate the nature and potential effect of the alleged external influence. Id. at 181-83.

Likewise, Barnes v. Joyner, 751 F.3d 229, 242-245 (4th Cir. 2014) requires a genuine opportunity to investigate a credible allegation of outside influence and to determine whether the jury remained impartial. It does not establish that testimony must be taken from every person who might possess potentially relevant or cumulative information. Barnes addresses the absence of a meaningful inquiry, not a situation in which the Court has conducted an evidentiary hearing, received sworn testimony, and allowed both sides to develop the record.

These authorities require an adequate and reliable process. They do not create an open-ended exhaustive investigation.

### A. Johnson II Approves Judge Bredar's Remand Procedure; It Does Not Convert That Procedure Into a Mandatory Minimum for Every Remmer Inquiry.

The proceedings following Johnson I reinforce the distinction between an adequate Remmer inquiry and a categorical requirement to call every available witness. On remand, Chief Judge Bredar conducted a three-day hearing and interviewed every juror and alternate, as well as the deputy marshals and court security officers involved in the incident. United States v. Johnson, No.

JKB-16-363, 2021 WL 4037708, at *5 (D. Md. Sept. 3, 2021). The Fourth Circuit later affirmed that procedure in an unpublished decision. United States v. Johnson ("Johnson II"), Nos. 21-4487, 21-4488, 21-4489, 2022 WL 17546916 (4th Cir. Dec. 9, 2022).

Johnson II is important, however, because the breadth of Judge Bredar's inquiry followed a specific appellate mandate. Johnson I remanded for an evidentiary hearing "to determine whether all the jurors remained impartial throughout the case." 954 F.3d at 182-83. Johnson II emphasized that the district court was required to implement that mandate and held that Judge Bredar's questioning "scrupulously carried it out." 2022 WL 17546916. The decision therefore demonstrates one appellate-approved method for implementing the particular Johnson I mandate; it does not announce a rule that every Remmer inquiry, regardless of posture and existing record, must include testimony from every juror and every potentially knowledgeable court employee.

That distinction matters here. This Court is not acting pursuant to a Fourth Circuit mandate requiring examination of every juror. It is deciding in the first instance whether the evidentiary record already developed is sufficient to resolve Defendant's pending motion. The Court has received sworn testimony from the nonjuror witness who reported the events, allowed adversarial examination, and may determine from the

resulting record which material facts have been established. Johnson II therefore does not displace the governing functional inquiry: whether the record is sufficiently developed to determine the circumstances of a qualifying external contact and whether the Government has carried its burden of proving harmlessness.

**B. Basham Confirms That Remmer Does Not Require Cumulative Fact-Finding Once the Court Has an Adequate Record.**

Basham is especially useful on the procedural question now before the Court. The Fourth Circuit emphasized that a district court has broad discretion in choosing how to handle claims of juror bias or misconduct and may address such claims as the circumstances require. 561 F.3d 302, 319-20 (4th Cir. 2009). Basham therefore confirms that Remmer does not impose a mandatory witness checklist or require the Court to pursue every conceivable source of additional evidence once the material facts have been adequately developed.

The question is not whether additional witnesses could theoretically be called. The question is whether the Court has a sufficiently reliable record to decide whether a qualifying external contact occurred and whether the Government has carried its burden of proving harmlessness. Because the Court has already developed a record directed to the Remmer issues, the

Court may exercise its discretion to decide the motion now rather than require cumulative testimony.

## II. THE EVIDENTIARY RECORD HAS MATERIALLY CHANGED SINCE THE PARTIES' INITIAL FILINGS.

When the Government filed its response, it argued that the written report did not establish "what actually transpired" and that an evidentiary hearing was therefore necessary. Defendant also recognized that further fact-finding could be appropriate if the Court was not prepared to grant relief on the original written record.

Those positions preceded the Court's evidentiary proceeding.

At the hearing on August 31, 2026, the court reporter testified under oath and verified the letter authored by the Chief Deputy Clerk virtually in every detail. Both parties were permitted to examine the witness.

The Court therefore is no longer being asked to act solely on an untested allegation. The evidentiary hearing supplied the competent factual foundation that the Government previously contended was missing. Defendant's earlier alternative request for testimony from additional jurors and court personnel does not prevent the Court from ruling on the record as it now exists. That request was made before the Court heard sworn testimony validating the reported events. Whether further evidence remains necessary must be determined from the record

developed at the hearing, not from the condition of the record before that hearing occurred.

**III. THE REPORTED COMMUNICATIONS WERE MORE THAN INNOCUOUS.**

The reported incidents were not routine administrative communications concerning scheduling, meals, courtroom logistics, or similar matters. They included communications allegedly involving: (1) a juror's question concerning the definition or elements of wire fraud; (2) conduct or communications occurring during the jury's deliberations; (3) remarks concerning Defendant's father that were communicated to or in the presence of jurors deemed to be "offensive" to the Courtroom Deputy and communicated as such to the jurors; (4) remarks and conduct from jurors making clear that each had made up their mind to convict the Defendant before closing statements had been given, and perhaps even before the close of all the evidence, in the presence of the Courtroom Deputy; (5) other unauthorized interactions between court personnel and members of the jury.

Any unauthorized communication or interaction with a deliberating jury - whether conveyed through spoken words, written communications, actions, gestures, facial expressions, body language, demeanor, or other nonverbal conduct - cannot simply be characterized as administrative or innocuous where it is capable of conveying information, influence, approval,

disapproval, or guidance concerning the case or the jury's deliberative process. If the Court finds by competent evidence that such unauthorized communications or interactions occurred and was more than innocuous, Defendant has satisfied the threshold identified in Cheek, and the Remmer presumption follows.

### A. The Deputy Clerk's Position of Trust and Demonstrated Departure From Jury Safeguards Heighten the Need for Application of the Remmer Presumption.

The circumstances cannot properly be evaluated by isolating individual spoken words or characterizing the Courtroom Deputy Clerk interactions with the jury as merely administrative. Remmer expressly encompasses private "communication" and "contact," whether occurring "directly or indirectly," and Cheek requires consideration of the nature and circumstances of the challenged interaction in determining whether it was more than an innocuous intervention. Remmer, 347 U.S. at 229; Cheek, 94 F.3d at 141.

Communication is not confined to spoken words. Actions, gestures, facial expressions, demeanor, and body language may communicate information as effectively as an express verbal statement when the surrounding context gives the conduct an identifiable meaning. An unauthorized interaction cannot be deemed innocuous merely because the message may have been conveyed nonverbally. Indeed, Cheek rejected an unduly narrow

focus on the absence of explicit prejudicial words and recognized that the meaning of an encounter may be understood from conduct and surrounding circumstances. Cheek, 94 F.3d at 141-43.

Johnson II further confirms, in a related but distinct context, that demeanor and body language are legitimate evidentiary considerations. In affirming Judge Bredar's post-remand findings, the Fourth Circuit specifically noted the district court's reliance on a juror's "body language and the intensity with which she expressed" her impartiality and emphasized the deference owed to trial judges who directly observe witness demeanor. Johnson II, 2022 WL 17546916. Johnson II addressed demeanor as evidence bearing on credibility and impartiality, not as an external communication itself; nevertheless, it reinforces that nonverbal conduct may carry evidentiary meaning and should not be treated as legally irrelevant merely because it was not spoken.

That principle carries particular meaning where the individual involved is a Deputy Courtroom Clerk of the Court. Courtroom Clerks serve as institutional liaisons among the Clerk's Office, the bench, counsel, and jurors and assist in administering jury proceedings. Those responsibilities require strict neutrality, faithful adherence to the Court's instructions and established jury procedures, protection of the

jury's independence and confidentiality, and avoidance of unauthorized words or conduct that could influence jurors or create the appearance of court-sanctioned guidance. Jurors may reasonably attribute special significance to a Courtroom Clerk's words, reactions, gestures, facial expressions, and body language because the Deputy Clerk is perceived as a representative of the Court.

The sworn testimony makes this concern concrete. The court reporter testified concerning Ms. Herndon’s reaction to the "cattle herding" comment and verified that her body language was perceived as reflecting an extremely negative reception of that comment. That testimony is evidence from an independent courtroom observer concerning the objectively communicative character of Ms. Herndon’s nonverbal reaction.

The evidence also established that jurors were permitted to remove their trial notes from the courthouse and take those notes home following the verdict in the case. Permitting juror notes to leave the courthouse constitutes a substantial departure from the safeguards governing juror materials and the confidentiality and integrity of the proceedings. It is particularly probative here because enforcing those safeguards falls within the courtroom administration and jury-management responsibilities entrusted to court personnel.

Mr. Britton-Harr does not contend that one procedural violation conclusively proves that every other rule was violated. The established breach does, however, materially undermine any assumption that all safeguards governing the jury and all restrictions on communications between court personnel and jurors were necessarily followed. Once competent evidence shows that an important jury safeguard was disregarded, the Court has substantial reason to scrutinize - rather than presume compliance with - the nature, extent, frequency, and substance of the Courtroom Deputy's verbal and nonverbal interactions with jurors.

These circumstances provide substantially more than speculation concerning an innocuous administrative encounter and permit the Court to find the minimal Cheek threshold satisfied.

**B. The Jurors' Conduct Before Submission of the Case Provides Additional Evidence of Premature Decision-Making and Disregard for the Presumption of Innocence and Disregard of the Court's Instructions.**

The Court's instructions required the jurors to remain impartial, keep an open mind throughout the presentation of the evidence and arguments, refrain from discussing or deciding the case before it was formally submitted for deliberations, and decide Defendant's guilt only after considering all of the evidence, the parties' closing arguments, and the Court's instructions on the governing law.

The evidence concerning the jurors' conduct raises a substantial question whether those instructions were followed. During closing arguments - before the case had been fully submitted to the jury - Juror No. 3 reportedly expressed a desire to hold up a sign stating, "WE ARE DONE." Viewed objectively and in context, that statement conveys that the juror believed the jury had already reached, or was prepared to reach, a decision before completion of the parties' arguments and the Court's final instructions. Defendant does not contend that the statement conclusively establishes the juror's subjective mental process. It is nevertheless observable conduct relevant to whether the juror maintained the open mind and impartiality required by the Court's instructions.

The forewoman also reportedly stated that she had told her husband that, after the jury was finished on Wednesday, she would not return to work until Friday. That statement may be susceptible to more than one interpretation and, standing alone, may reflect no more than an expectation concerning the trial schedule. Considered together with the "WE ARE DONE" statement and the jurors' subsequent conduct concerning coming to the sentencing hearing, however, provides additional context from which the Court may draw an inference that the jury had concluded a result before the case was formally submitted.

The most concrete additional evidence concerns the jurors' collective communication with the Deputy Clerk. On or about the seventh day of trial, the entire jury reportedly placed their names, telephone numbers, and email addresses on a single piece of paper, delivered that document to the Deputy Clerk, and asked whether they would be permitted to attend Defendant's sentencing. The court reporter personally observed the document.

This incident is significant for several reasons.

First, sentencing could occur only following a conviction. A collective request to attend Defendant's sentencing before the case had been fully submitted is therefore subject to but one inference that jurors were already anticipating a guilty verdict.

Second, the document and sentencing notice constitute a direct interaction between the jury and the Deputy Courtroom Clerk concerning a verdict - not a routine question about meals, scheduling, transportation, or courtroom logistics. The communications bear directly upon the nature and extent of Ms. Herndon’s interactions with jurors and further undermines the characterization of those interactions as entirely administrative or innocuous.

Third, the court reporter's personal observation supplies non-juror evidence of an objectively verifiable event: the existence and physical delivery of the jurors' contact

information. Rule 606(b) restricts post-verdict testimony from jurors concerning deliberations and mental processes, but it does not make a non-juror courtroom witness incompetent to testify about conduct or communications personally observed outside the jury's deliberations. Tanner v. United States, 483 U.S. 107, 127 (1987), recognized non-juror evidence and contemporaneous observation as safeguards independent of prohibited post-verdict juror testimony.

Fourth, the incident underscores the significance of the Courtroom Deputy's role without making additional testimony from the Deputy Clerk necessary. A court official entrusted with maintaining appropriate boundaries between jurors and court personnel should not facilitate an unauthorized exchange of personal contact information or engage in discussions concerning sentencing outside the Court's supervision.

These incidents must be considered cumulatively. Individually, a particular incident might be characterized as ambiguous; collectively, however, they establish a pattern of conduct that warrants a new trial.

**C. The Court Need Not Resolve Every Internal Allegation of Juror Misconduct to Grant Relief.**

The external-contact issue provides an analytically independent basis for relief. The Court need not determine the jurors' subjective deliberative processes, nor resolve every

reported instance of premature decision-making, if competent nonjuror evidence establishes a qualifying external contact and the Government fails to rebut the resulting Remmer presumption. The pre-submission conduct is therefore offered as additional objective context where admissible, not as a substitute for the external-contact showing.

Federal Rule of Evidence 606(b) does not prevent the Court from determining whether "extraneous prejudicial information was improperly brought to the jury's attention" or whether "an outside influence was improperly brought to bear on any juror." Fed. R. Evid. 606(b)(2)(A)-(B). The Court can decide the external facts surrounding the communication without examining the jurors' subjective thought processes, mental impressions, or deliberative reasoning. Moreover, unnecessary expansion of the inquiry risks moving the proceeding toward precisely the deliberative territory Rule 606(b) protects. Where competent non-juror testimony already establishes the relevant external events, restraint serves both Remmer and Rule 606(b): Remmer requires an adequate inquiry into external influence, while Rule 606(b) protects the finality and secrecy of the jury's deliberative process. The Court therefore need not question jurors merely to duplicate objective facts already established through admissible nonjuror testimony.

**C. If the Court Elects to Take Additional Juror Testimony, Johnson II Provides a Narrow Rule 606(b) Procedure Without Making Additional Testimony Legally Necessary.**

Johnson II also identifies a procedure the Court may use if, notwithstanding the existing record, it determines that limited additional juror testimony would materially assist the inquiry. Judge Bredar instructed each juror not to disclose deliberations, how the verdict was reached, or anything the juror thought or felt after deliberation began. He then confined the pertinent questions to whether the juror felt intimidated and remained impartial and open-minded during the trial before deliberations. Johnson II held that this questioning complied with Rule 606(b) because it did not inquire into the effect of anything on a juror's vote or mental processes concerning the verdict. 2022 WL 17546916.

That procedure is particularly relevant to reported pre-deliberation events here, including observable conduct during closing argument and interactions with court personnel before the case was submitted. If additional testimony is ordered, the Court can expressly limit questioning to objective events, external contacts, and pre-deliberation impartiality while prohibiting inquiry into statements made during deliberations, the effect of anything on a juror's vote, or mental processes concerning the verdict. See Fed. R. Evid. 606(b)(1),(2). The availability of that alternative, however, should not be

confused with a holding that such additional testimony is required where the existing competent record is already sufficient to resolve the Remmer issues.

**IV. ONCE THE PRESUMPTION APPLIES, REMAINING UNCERTAINTY OPERATES AGAINST THE GOVERNMENT.**

Once the Defendant establishes competent evidence of a qualifying external contact, Defendant is not required to prove actual prejudice or reconstruct every consequence of the communication. The burden instead rests upon the Government to demonstrate that there is no reasonable possibility that the verdict was influenced. Cheek, 94 F.3d at 141; Basham, 561 F.3d at 320.

The Government cannot convert its substantive burden of proving harmlessness into an indefinite demand for additional fact-finding. If, after a meaningful evidentiary inquiry, a reasonable possibility of influence remains, that uncertainty does not require the Court to continue calling witnesses until the Government can rebut the presumption. It may instead establish that the Government has failed to carry its burden. The Government should not be permitted to convert its failure to rebut prejudice on the present record into a reason to obtain additional evidence with which to try again. Once the Defendant has satisfied his threshold burden and the Remmer presumption applies, the issue is whether the Government has carried its

burden on the evidence before the Court. If it has not, Remmer calls for relief; it does not require an indefinite continuation of fact-finding in search of evidence capable of satisfying a burden the Government has not otherwise met.

**A. The Basham Factors Should Be Addressed Expressly on the Existing Record.**

Basham directs the Court, in deciding whether the Government has eliminated any reasonable possibility of influence, to consider the extent of the improper communication, the extent to which it was discussed or considered, the type of information communicated, the timing of the exposure, and the strength of the Government's case. 561 F.3d at 320. The extent of communication is the most important factor. Id.

Applied here, those factors should be resolved through express findings tied to the hearing record. The reported contacts were not confined to a single fleeting administrative exchange; the record describes multiple interactions with court personnel and includes a collective jury communication concerning attendance at Defendant's sentencing. The type and timing of the contacts are likewise material because communications concerning the charged offense, the prospective consequence of a conviction, or the jury's decision-making process are qualitatively different from meals, scheduling, or transportation.

Johnson II illustrates what affirmative evidence sufficient to rebut the presumption can look like. There, Judge Bredar found after the remand hearing that no photographs of the jury had actually been taken; the challenged report produced minimal concern; the reporting juror was removed; the remaining jurors received a curative instruction; the incident occurred approximately two weeks before deliberations; and the Government's case was exceptionally strong. The Fourth Circuit concluded that, taken together, those objective circumstances supported the finding that there was no reasonable possibility of improper influence. Johnson II, 2022 WL 17546916; Johnson, 2021 WL 4037708, at *27, *30-*31.

Johnson II therefore does not stand for the proposition that the Government satisfies Remmer merely because additional witnesses can be called. It demonstrates that the Government must ultimately point to a developed record containing facts that affirmatively establish harmlessness under the applicable factors, including the extent and type of communication, its timing, the extent to which it was discussed or considered, and the strength of the Government's case. See Basham, 561 F.3d at 320. The relevant question here remains whether the Government has produced comparable evidence sufficient to eliminate any reasonable possibility that the established improper contacts influenced the verdict.

United States v. Elbaz illustrates a related distinction. 52 F.4th 593, 616-20 (4th Cir. 2022). There, the district court discovered the external influence while the trial remained underway. The affected juror was removed, judicial questioning established that the outside information had not reached the remaining jurors, an alternate was seated, and the reconstituted jury was instructed to begin deliberations anew. On that developed record, the Fourth Circuit held that the Government rebutted the presumption.

But Elbaz expressly distinguished circumstances in which "the verdict has been returned and the jury dismissed," recognizing that the Government then "faces more difficulty" establishing that the information was not known or considered by the jurors who rendered the verdict. Id. at 620 n.12. When an impropriety is discovered before a verdict, the court can remove a juror, issue curative instructions, and restart deliberations. Those safeguards cannot be recreated after the jury has returned its verdict and been discharged. Id.

That distinction applies directly here. Elbaz specifically identifies the post-verdict, post-discharge posture as one in which the Government faces greater difficulty establishing that improper information was neither known nor considered by the jurors who rendered the verdict. Id. at 52 F.4th at 620 n.12. This case presents that more difficult posture: the alleged

misconduct was not fully disclosed and adjudicated while the jury remained empaneled. The Court consequently had no contemporaneous opportunity to remove an affected juror, prevent further communication, issue effective curative instruction, or direct a properly constituted jury to restart deliberations. Those safeguards cannot now be recreated. That circumstance makes the Government's harmlessness burden more difficult; it does not enlarge Defendant's threshold burden or require Defendant to eliminate every factual uncertainty.

**V. A DECISION ON THE PRESENT RECORD WOULD BE CONSISTENT WITH JOHNSON I, JOHNSON II, AND REMMER.**

The circumstances here are materially different from the inadequate initial inquiry examined in Johnson I. The Court has: (1) conducted an evidentiary proceeding directed specifically to the reported outside communications; (2) received sworn testimony from the individual who prepared or supplied the information underlying the contemporaneous report; (3) permitted both parties to examine the witness; (4) considered the nature and subject matter of the reported contacts; and (5) afforded the Government an opportunity to identify and develop evidence relevant to harmlessness.

Johnson II does not alter that conclusion. It affirmed a more extensive hearing because Judge Bredar was carrying out a specific appellate mandate directing a Remmer hearing concerning

whether all jurors remained impartial. It did not hold that a district court must replicate that witness-by-witness procedure in every case before it may rule. The present Court retains discretion to determine whether the competent evidence already received establishes the material circumstances and permits application of the governing burden of proof.

If the Court determines that this evidence establishes the circumstances material to the Remmer analysis, controlling precedent does not require cumulative testimony merely because other witnesses could also be called. The question is not whether more evidence could theoretically be collected. Additional evidence can almost always be imagined. The question is whether the existing record permits the Court to determine whether a qualifying unauthorized communication occurred and whether the Government carried its burden of showing no reasonable possibility of influence.

The Court can further protect the appellate record by making express findings concerning: (1) which portions of the reported incidents were established through competent evidence; (2) whether those communications concerned the matter pending before the jury; (3) why the communications were more than innocuous; (4) why any proposed additional testimony would be cumulative, immaterial, inadmissible, or unnecessary to the governing legal determination; (5) whether the Remmer presumption applies; and

(6) whether the Government established that no reasonable possibility exists that the communications influenced the verdict.

A ruling now can therefore be made on an appellate-ready record without equating appellate caution with additional witnesses. The Court can identify the competent evidence it credits, specify the external contacts it finds established, determine whether each was more than innocuous, apply the Basham factors, state whether the Remmer presumption attaches, and determine whether the Government carried its heavy burden of eliminating any reasonable possibility of influence. Detailed findings on those questions address the concern identified in Johnson I, a record sufficient to show what actually transpired and to permit meaningful review.

Alternatively, if the Court concludes that a discrete factual issue remains genuinely material, it may identify that issue and take narrowly tailored testimony consistent with the Rule 606(b) limitations approved in Johnson II, without reopening subjects already established through competent evidence. That approach would preserve the Court's ability to complete any fact-finding it deems necessary while avoiding an open-ended inquiry untethered to a material unresolved question.

Detailed findings on these points would demonstrate that the Court exercised its discretion after a focused evidentiary inquiry and applied the correct burden of proof.

**CONCLUSION**

Remmer, Cheek, Basham, Johnson I, Johnson II, and Barnes require sufficient fact-finding to permit a reliable determination of the circumstances and prejudice. They do not require the Court to exhaust every possible witness or duplicate objective fact already established through competent evidence.

The Court has conducted an evidentiary proceeding, received sworn testimony concerning the reported unauthorized communications, and permitted both parties to participate in developing the record. If the Court finds that this evidence establishes an extrajudicial contact concerning the matter before the jury that was more than innocuous, the presumption of prejudice applies. The burden then rests heavily upon the Government to establish that there is no reasonable possibility that the verdict was influenced.

Because the Government has not carried that burden, the Court should grant the pending motion for new trial, vacate the verdict, and order a new trial.

Respectfully submitted,

/s/ Gerald C. Ruter

_______________________________________

Law Offices of Gerald C. Ruter, P.C.
9411 Philadelphia Road, Suite O
Baltimore, Maryland 21087
(410) 227-1709
Ruterlaw@verizon.net

**Certificate of Service**

I hereby certify that this document was filed electronically through CM/ECF on this 11th day of September, 2026, to all counsel of record.

/s/ Gerald C. Ruter

___________________________________

Gerald C. Ruter